IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NUTTA VERDIER,** <br><br> Petitioner, <br><br> v. <br><br> **TOM McGINLEY, et al.,** <br><br> Respondents. | **CIVIL ACTION** <br><br><br> **NO. 20-1916-KSM** |

### MEMORANDUM

**J. Marston**                                                                              **August 14, 2024**

*Pro se* petitioner Nutta Verdier, who is presently incarcerated at SCI Phoenix, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. Nos. 1, 26.) On January 5, 2024, the Honorable Lynne A. Sitarski, United States Magistrate Judge, submitted an Amended Report and Recommendation ("Amended R&R") recommending that the petition be dismissed.[1] (Doc. No. 45.) Petitioner objected to the initial R&R (Doc. No. 9), but did not object to the Amended R&R. For the following reasons, Petitioner's objections are overruled, and the Court adopts the Amended R&R in its entirety.

---

[1] Petitioner was represented by counsel when he filed his original habeas petition on April 14, 2020, asserting three grounds for relief. (Doc. No. 1.) Judge Sitarski issued the original Report and Recommendation ("R&R") on September 6, 2020 recommending the petition be denied (Doc. No. 8), to which Petitioner objected (Doc. No. 9). The Court later granted Petitioner's counsel leave to withdraw (Doc. No. 22), and permitted Petitioner leave to file a supplemental habeas petition (Doc. No. 18), which he did on August 11, 2022 (Doc. No. 26). In response, Judge Sitarski issued the Amended R&R. (Doc. No. 45.)

I. **BACKGROUND**

A. **Underlying Conduct**

This habeas petition arises out of a tragic shooting on March 9, 2007 involving Petitioner. The week prior to the shooting, two high school students named Jacque Warren and Darrell Cobb had an argument that led to a brief exchange of gunfire. (Doc. No. 45 at 1–2.) No one was injured. (*Id.*) On March 9, the day of the fatal shootout, Warren learned Cobb was at a nearby auto body shop and went to confront him, accompanied by Petitioner, as well as his friends Eric Cooper and "GoGo." (*Id.* at 2.) The group took Cooper's grandmother's purple minivan. (*Id.*) Three of them were armed: Petitioner carried a .9mm pistol, Cooper carried a .45 caliber pistol, and GoGo carried a .40 caliber pistol. (*Id.*)

When they pulled up across from the auto body shop, Petitioner and Cooper jumped out of the vehicle and opened fire upon Cobb, who was standing on the opposite side of the auto body shop. (*Id.*) Cobb took cover behind a tree, drew a .38 caliber revolver, and returned fire, striking the minivan. (*Id.*) From near the rear passenger door, GoGo fired towards the auto body shop upon two men working there, striking both. (*Id.*) The first man, Gary Bigelow Autry, was killed[2] and the second man, Derrick Seals, managed to get to his vehicle and drive to the hospital where he was treated for gunshot wounds. (*Id.*)

Shortly after, police responded to a report of a shooting and learned about two vehicles fleeing the scene: the purple minivan and Seals' Nissan Maxima. (*Id.* at 3.) Among other evidence, police recovered twelve .9mm fired cartridge casings ("FCCs"), six .40 caliber FCCs, and nine .45 caliber FCCs, for a total of 27 shots fired. (*Id.*) Cobb later identified Warren, Cooper, and the Petitioner from a photo array as participants in the shootout. (*Id.*)

---

[2] Before he died, Autry told Ivan Hicks, his co-worker and step-father, that he had been shot and that the perpetrators were in a minivan. (*Id.* at 3.) Hicks watched Autry die in the street. (*Id.*)

Following the shooting, Petitioner, Cooper, Warren and GoGo returned to Cooper's grandmother's home. (*Id.* at 4.) GoGo claimed that he "did something" to one of Cobb's associates. (*Id.*) Soon after, police discovered a bullet hole near the front driver's side wheel of Cooper's grandmother's purple minivan and recovered a projectile. (*Id.*) Seals' Nissan Maxima also had a strike mark on the passenger door and damage to the rear windshield consistent with a bullet strike. (*Id.*) On March 22, 2007, detectives searched Cooper's grandmother's home, finding twenty-five .9mm rounds, four .45 caliber rounds, and extended handgun magazines. (*Id.*)

A ballistics expert determined that the .9mm, .40 caliber, and .45 caliber FCCs were fired from one handgun of each respective caliber, and a .38 caliber FCC recovered on the scene was fired by Cobb's revolver. (*Id.*) Police determined that three shooters were in the vicinity of the minivan at the time of the shooting. (*Id.*)

### B.     Trial

At trial, Warren cooperated and testified for the prosecution. (*Id.* at 12.) His testimony began on a Thursday and resumed the following Tuesday. (*Id.*) On Thursday, Warren testified that Petitioner and Cobb exchanged shots at each other during the shootout. (N.T. Oct. 4, 2012 at 150:3–23.) He also testified that he did not know whether anybody was armed when the group got into the purple minivan. (Doc. No. 45 at 12.) During the intervening weekend, the prosecutor and Warren's counsel had a conversation. The prosecutor expressed dissatisfaction with Warren's testimony, since it contradicted Warren's previous statement to the police that he had in fact known that the group was armed. (*Id.*) Warren's counsel spoke with Warren prior to Warren returning to the witness stand and relayed the prosecutor's dissatisfaction with his prior testimony. (*Id.*) This conversation was in direct violation of the trial court's sequestration order.

3

(*Id.*)  Petitioner's counsel, upon learning of the communication between Warren and his counsel, immediately moved for a mistrial.  (*Id.*)  The trial court denied the motion, noting that even if there were a new trial, Warren would still know what the prosecution thought of his previous testimony.  (N.T. Oct. 9, 2012 at 33:13–14.)

The following Tuesday, Warren returned to the witness stand and changed his prior testimony so that it was now consistent with his pre-trial statement.  Specifically, Warren admitted that he knew Petitioner, Cooper, and GoGo were armed and the weapon that each man carried prior to getting in the purple minivan.  (*Id.* at 101:19–102:4.)  But, later the same day, Warren again testified that he was unaware that Petitioner and the others were armed.  (N.T. Oct. 9, 2012 at 149:19–151:9.)

In its discretion and in consultation with the parties, the trial court fashioned a stipulation which read as follows:

> Over the weekend, the Assistant District Attorney spoke to the witness's lawyer and told him that she was dissatisfied with the witness's testimony because he testified that he didn't see anyone get in the van with a gun, whereas in trial preparation and in a pretrial interview, he had stated that all three men had guns when they got in the van. The witness's attorney then communicated this to the witness and indicated to him that this might affect further proceedings before Judge Minehart.

(*Id.* at 102:5–155:4.)  Neither party objected to the stipulation.  (*Id.* at 154:7–155:9.)  The trial court also allowed Petitioner's counsel to ask Warren on cross-examination about the impact of his conversation with his attorney on his trial testimony.  (*See* N.T. Oct. 9, 2012 at 132:10–133:4; 138:11–25; 142:18–143:12.)

The jury ultimately found Petitioner guilty of third-degree murder, attempted murder, conspiracy, aggravated assault, firearms not to be carried without a license, and possession of an instrument of a crime.  (Doc. No. 45 at 5.)  Petitioner was sentenced on December 19, 2012 to a

4

term of twelve to forty years' imprisonment for the third-degree murder conviction as well as seven to twenty years' imprisonment for the attempted murder conviction to be served consecutively. (*Id.*) No further penalty was imposed for the remaining convictions. (*Id.*) In total, Petitioner was sentenced to a term of nineteen to sixty years' imprisonment.

### C. Direct Appeal

Petitioner filed a timely post-sentencing motion, which was denied on December 27, 2012. (*Id.*) On appeal, the Superior Court affirmed his judgment of sentence.[3] (*Id.*)

### D. PCRA Hearing & Appeal

On November 8, 2017, Petitioner filed a timely *pro se* PCRA petition. (Docket at 16, *Commonwealth v. Verdier*, CP-51-CR-0008626-2010 (Ct. Com. Pl. Phila. Cnty.)) ("Verdier State Court Docket").)[4] The PCRA Court dismissed his petition on April 19, 2018, and the Superior Court affirmed the denial of the PCRA petition on April 1, 2019. (Doc. No. 45 at 5.) Petitioner appealed to the Pennsylvania Supreme Court, which denied allowance of appeal on August 22, 2019. (*Id.*)

### F. Habeas Proceeding

Petitioner, through counsel, filed the instant habeas petition on April 14, 2020, raising three claims for relief (recited verbatim):

> 1) The Trial Court violated Petitioner's Sixth Amendment right to Confrontation with regard to the violation of the sequestration order of Jacque Warren.

---

[3] Although Petitioner's original appeal was dismissed because his attorney failed to file a brief, the PCRA court granted Petitioner's request to reinstate his appellate rights. (Doc. No. 45 at 5.)

[4] Petitioner was subsequently appointed counsel, who filed an amended PCRA petition on February 28, 2018. (Verdier State Court Docket at 17.)

    2)    After-discovered evidence from Sharif Warren [Jacque Warren's brother] and confession from co-defendant Jacque Warren establishing Petitioner's actual innocence.

    3)    Insufficient evidence to convict the Petitioner of third-degree murder.

(Doc. No. 1 at 7, 21, 26.). This Court referred the petition to Judge Sitarski for a R&R. (Doc. No. 2.) Judge Sitarski issued the initial R&R on September 16, 2020 recommending that the petition be denied. (Doc. No. 8.) Petitioner filed counseled objections on October 8, 2020, and the Commonwealth responded on October 13, 2020. (Doc. Nos. 9, 12.)

On March 16, 2021, before the Court ruled on the pending objections, Petitioner filed a subsequent *pro se* PCRA petition. (Doc. No. 45 at 6; Verdier State Court Docket at 19.) In response, this Court stayed Petitioner's federal habeas petition on April 19, 2021. (Doc. No. 16.) Petitioner's subsequent PCRA petition was denied on May 6, 2021, and the dismissal was affirmed by the Superior Court on January 11, 2022. (Verdier State Court Docket at 19–20.) On January 26, 2022, the Court granted Petitioner permission to supplement his habeas petition, and on May 23, 2022, this Court granted Petitioner's counsel's motion to withdraw. (Doc. Nos. 18, 22.) On August 16, 2022, Petitioner filed a *pro se* Supplement to Original Habeas Corpus Petition, withdrawing his second habeas claim of actual innocence and adding two additional claims (recited verbatim):

    1)    Trial counsel was ineffective in failing to investigate and prepare a defense strategy[.][5]

    2)    Trial counsel was ineffective for failing to make a key argument to the jury regarding the doctrine of transferred intent during closing

---

[5] Petitioner later clarifies that the "defense strategy" that counsel allegedly failed to investigate was a "lack of transferred intent." (Doc. No. 26 at 4 ("Trial counsel . . . prepared his defense based on the lack of transferred intent, however, . . . that trial counsel could not have performed any meaningful pretrial investigations. A cursory review of the relevant statutes and case law shows that counsel could not have performed any meaningful research."); *see also* Doc. No. 45 at 7 n.4.)

>   arguments after the trial court gave permission for counsel to make
>   such argument.

(Doc. No. 26 at 3, 11, 18.)  The Court lifted the stay in this matter on August 22, 2022.  (Doc. No. 27.)  On January 5, 2024, Judge Sitarski issued an Amended R&R recommending Petitioner's claims all be denied.  (Doc. No. 45.)  Petitioner has not filed any objections to the Amended R&R.[6]

## II.    LEGAL STANDARDS

### A.    Standards Governing Review of a Magistrate Judge's R&R

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation." *Piasecki v. Ct. Com. Pl. of Bucks Cnty.*, Civil Action No. 14-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021). Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980).  "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate." *Raddatz*, 447 U.S. at 692. After reviewing the magistrate judge's conclusions, the district court may "accept, reject, or

---

[6] The Amended R&R did not revise any analysis or recommendations as to Petitioner's original habeas claims; the Amended R&R merely adds analysis as to the new claims and deletes any analysis related to Petitioner's withdrawn actual innocence clam. (*See* Doc. Nos. 8, 45.)  As such, this Court will still consider Petitioner's objections to the initial R&R.

modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

If a petitioner objects to only a portion of the R&R, the objected-to recommendations are reviewed *de novo* and the unobjected-to claims are reviewed for clear error. *See Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006).

### B. Standards Governing Habeas Actions

An individual in state custody may request that a federal court issue a writ of habeas corpus ordering his release. *See* 28 U.S.C. § 2254. The writ may issue "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See id.* § 2254(a). Out of principles of comity and federalism, the availability of the writ is "narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. 366, 375 (2022).

If the state court ruled on the merits of the federal claim, the federal court must defer to the state court's ruling and deny habeas relief unless the petitioner satisfies the standard outlined in § 2254(d)(1) or (2).

Under § 2254(d)(1), the court will not defer to the state court's ruling if the petitioner shows that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). For a state court decision to be "contrary to" clearly established federal law, "the state court [must] arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decide[ ] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (cleaned up). A state court decision involves an "unreasonable application of" clearly established federal law when "[it] resulted in an outcome

that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 890. This occurs when the state court "identifie[s] the correct governing legal rule . . . but unreasonably applie[s] it to the facts of the particular . . . case" or when the state court "unreasonably extend[s] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[s] to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.

Should the petitioner fail to satisfy § 2254(d)(1), the Court will defer to the state court's ruling (and thus, deny habeas relief), unless the petitioner can show that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). There is a presumption of correctness for factual determinations made by state court judges, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004).

### III. ANALYSIS

As noted above, Petitioner's outstanding claims for habeas relief include: (1) violation of his Confrontation Clause right; (2) insufficient evidence to convict Petitioner; (3) ineffective assistance of trial counsel for failing to investigate and prepare a defense strategy; and (4) ineffective assistance of trial counsel for failing to make an argument regarding transferred intent during closing arguments. (Doc. Nos. 1, 26.) The Amended R&R recommends that we deny all four claims. (Doc. No. 45 at 16, 18, 27, 29.) Petitioner objected to Judge Sitarski's recommendation for the first two claims; thus, they are reviewed *de novo*. However, because he did not object to the Amended R&R on the second two claims, they are reviewed for clear error.

This Court addresses each claim below in turn.

### A. Confrontation Clause Claim

In Petitioner's first ground for relief, he claims that his Sixth Amendment right to confrontation was violated when the prosecutor spoke with Warren's attorney, who in turn spoke with Warren in violation of the state court's sequestration order.[7] (Doc. No. 1.) The Sixth Amendment grants criminal defendants the right to confront any witnesses testifying against them through cross examination. U.S. Const. amend. VI. Petitioner argues in his habeas petition that his Sixth Amendment Confrontation Clause rights were violated when the trial court refused: (1) to grant a mistrial, (2) to permit Petitioner to confront Warren about his conversation with his attorney, (3) to allow him to confront the prosecutor or Warren's attorney as witnesses, or (4) to strike Warren's testimony. (Doc. No. 1 at 7–21.)

Judge Sitarski found Petitioner's claim to be both procedurally barred and meritless.[8] (Doc. No. 45 at 14–16.) First, Judge Sitarski found that because the trial court gave Petitioner the opportunity to cross-examine Warren about his conversation with his attorney, the Superior Court's finding of no constitutional violation was not contrary to or an unreasonable application of federal law. (*Id.* at 16.) Second, Judge Sitarski found that Petitioner failed to show that the trial court's refusal to allow his counsel to cross-examine the prosecutor or Warren's attorney was a Sixth Amendment violation, and therefore, the Superior Court's finding of no violation was not contrary to or an unreasonable application of federal law. (*Id.* at 15–16.) Notably, neither the prosecutor nor Warren's counsel gave any testimony against Petitioner and no out-of-court statements were introduced against him. (*Id.*) Third, and finally, Judge Sitarski found

---

[7] Petitioner's attorney moved for a mistrial based on this alleged Sixth Amendment violation, but the trial judge denied the motion. (Doc. No. 45 at 12.)

[8] Because the Court finds that Petitioner's habeas claims are without merit, the Court need not address whether his claims are procedurally barred.

Petitioner's claim meritless because the trial court—which has significant discretion to fashion a remedy when a witness violates a sequestration order—did not abuse its discretion in issuing the stipulation as opposed to granting a mistrial. The trial judge found that a stipulation was the appropriate remedy after taking into account the substantial costs for all parties if a mistrial was declared, the fact that even at a subsequent trial, Warren would not have forgotten what the prosecutor said or thought about his prior testimony, and that the defense would actually have been harmed if the court struck Warren's testimony.[9] (*Id.* at 14–15.)

Petitioner, then represented by counsel, objected to Judge Sitarski's R&R. (Doc. No. 9.) Petitioner does not appear to object to Judge Sitarski's finding that there was no Confrontation Clause violation when the trial court refused to permit cross-examination of the prosecutor or Warren's attorney.[10] (Doc. No. 9.) However, Petitioner does object that the Amended R&R erroneously found: (1) that the defense agreed to the stipulation, and (2) that "Petitioner's constitutional rights under the Confrontation Clause and to a fair trial are less important than the state court's desire to not incur the costs of a retrial." (*Id.* at 2.) The Court addresses each argument in turn.

---

[9] Judge Sitarski referenced the Superior Court's finding that striking all of Warren's testimony may have ultimately harmed the defense since his initial testimony was favorable to the defense. (Doc. No. 45 at 13, 15 (citing *Verdier*, 2017 WL 3976366, at *6).)

[10] To the extent Petitioner objects to Judge Sitarski's recommendation that Petitioner suffered no Confrontation Clause violation when the trial court refused to permit cross-examination of Warren's attorney or the prosecutor, the Court nevertheless agrees that there was no constitutional violation. Neither Warren's attorney nor the prosecutor offered testimony or out-of-court statements against Petitioner. *See Davis v. Washington*, 547 U.S. 813, 824 (2006) (holding that the Confrontation Clause only extends to "testimonial" statements offered by an individual); *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that nontestimonial hearsay statements are exempted from Confrontation Clause scrutiny). As such, the Court agrees with Judge Sitarski's recommendation and finds that the Superior Court's holding denying Petitioner's claim was not contrary to or an unreasonable application of federal constitutional law.

First, to the extent Petitioner alleges that the stipulation was "forced" onto the parties by the trial court and that Petitioner's counsel did not agree to it, the record does not reflect this characterization. (*Id.* at 2.)  In fact, the record shows that Petitioner's counsel affirmatively agreed to the stipulation, stating the court's suggestion of a stipulation is "fine with me" and that he would be able to "argue the rest." (N.T. Oct. 9, 2012 at 118:23–24, 145:2–3; *id.* at 146:20 (Petitioner's counsel agreeing, "That's fine," upon hearing the Court's proposed stipulation); *id.* at 155:5–8 (Petitioner's counsel agreeing to the stipulation in open court after the Court read the stipulation to the jury).)  Thus, the Court overrules Petitioner's objection that any stipulation at trial was made without his consent. *See Commonwealth v. Colon*, 846 A.2d 747, 752–53 (Pa. Super. 2004) (holding that defendant waived his right to raise an issue on appeal when his counsel "acceded to the trial court's ruling and did not place an objection on the record when the testimony was offered to the court"); *Commonwealth v. Griffin*, 684 A.2d 589, 595 (Pa. Super. 1996) ("Appellant's counsel did not object to the ruling of the trial court, and in fact acceded to the judge's ruling.  As a result we find that appellant has waived his right to argue this issue on appeal.").

Second, to the extent Petitioner argues that the trial court valued judicial efficiency over his constitutional rights, this Court disagrees and does not discern any Confrontation Clause violation.  Petitioner's Sixth Amendment right to confrontation was not violated because Petitioner's counsel was permitted a chance to cross-examine Warren regarding the impact his conversation with his attorney had on his trial testimony. (*See* N.T. Oct. 9, 2012 at 132:10–133:4, 138:11–25, 142:18–143:12.)  Although Petitioner's counsel did not "capitalize on this permission," he could have, and thus the Court agrees with Judge Sitarski that the Superior Court did not unreasonably apply federal constitutional law when it rejected this claim. *See Real v.*

12

*Link*, Civil Action No. 16-34, 2019 U.S. Dist. LEXIS 105132, at *47–48 (E.D. Pa. June 20, 2019) ("[The defendant] *did* have the opportunity to cross-examine [the witness] regarding his criminal history, but chose not to. His failure to do so cannot be attributed to the court or to the prosecution, and on that basis his challenge fails."); *Jackson v. Johnson*, Civ. No. 15-6690(KM), 2018 U.S. Dist. LEXIS 129448, at *26–31 (D.N.J. Aug. 1, 2018) (in state trial where the witness who was overcome with emotion was permitted to take a break and speak with someone from the prosecutor's office outside the courtroom, holding that there was no violation of the Confrontation Clause because "if any words were exchanged between [the witness] and the [individual from the prosecutor's office] during the three-minute recess, defense counsel was free to question [the witness] on the topic when she returned to the witness stand"); *Regan v. Overmyer*, Civil Action No. 19-5102, 2023 U.S. Dist. LEXIS 124953, at *15 (E.D. Pa. July 19, 2023) (holding no confrontation clause violation where "nothing that occurred at the preliminary hearing in [the defendant's] case in any way restricted his trial counsel from fully cross-examining [the witness]"). *See also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (emphasis in original) (cleaned up).

      In addition, the Court declines to conflate Petitioner's constitutional Sixth Amendment right with the trial court's duty to properly use its discretion to fashion remedies following a violation of sequestration. The trial court's discretion in selecting a remedy after a sequestration order has been violated is a matter of state law. *See Commonwealth v. Robertson*, 874 A.2d 120, 1209–10 (Pa. Super. 2005.) Yet, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

13

*Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As such, the Court declines to review the trial court's reasoning for giving a stipulation as opposed to granting a mistrial or striking testimony since these considerations are divorced from the Confrontation Clause analysis discussed above. *See Jackson*, 2018 U.S. Dist. LEXIS 129448, at *30–31 (citing *Estelle*, 502 U.S. at 67–68) (after discussing alleged Confrontation Clause violation, holding that "[t]o the extend [the defendant] finds some other impropriety with respect to the alleged violation of the sequestration order, that is not a matter proper for habeas review"); *Pillette v. Berghuis*, 408 F. App'x 873, 882 (6th Cir. 2010) ("Pillette contends that the court's failure to sequester Brower prior to her preliminary examination compounds the alleged Confrontation Clause violation.  But the district court properly analyzed this as a separate claim apart from the Confrontation Clause; whether or not Brower remained in the courtroom in violation of a sequestration order before testifying at the preliminary examination has no bearing on the *Crawford* inquiry.").

Thus, the Court overrules Petitioner's objections, and concludes that Petitioner is not entitled to relief on his Confrontation Clause claim.

### B.    Sufficiency of the Evidence Claim

Petitioner's next ground for relief claims his due process rights were violated because there was insufficient evidence to convict him of third-degree murder.  (Doc. No. 1 at 26–31.) Petitioner argues that the lack of physical, forensic, or testimonial evidence tying him to the crime scene, combined with inconsistencies in Warren's testimony, provides insufficient support for a guilty verdict.  (*Id.*)  Moreover, Petitioner argues that the evidence illustrated that Petitioner

shot at Cobb, who was on the opposite side of the street of the auto body shop where Autry was killed, and therefore the doctrine of transferred intent does not apply.  (*Id.*)

The Superior Court rejected Petitioner's claims regarding transferred intent because in Pennsylvania, third-degree murder requires only malice and not a specific intent to kill—so the Commonwealth was only "required to prove [] that Verdier acted with 'recklessness of consequences . . . although a particular person [was] not intended to be injured.'"  *Verdier*, 2017 WL 3976366, at *2–3.  With this in mind, and based on the facts outlined above, including evidence that at least 27 shots were fired by Petitioner, Cooper, and GoGo during the shootout and that Petitioner and Cobb fired shots at each other, the Superior Court had "no difficulty" determining that a reasonable jury could have found that Petitioner had "acted with a complete disregard of the high risk that his actions in pursuing his vendetta against Cobb would cause significant bodily injury to any number of innocent bystanders in the area."  *Id.*  In the Amended R&R, Judge Sitarski agreed that the Superior Court reasonably adjudicated the claim that a rational juror could have found every element of third-degree murder satisfied, including malice, and recommended that we deny the habeas claim.  (Doc. No. 45 at 16–18.)

Petitioner, then-represented by counsel, objected to the R&R, arguing that this Court's review of the sufficiency of the evidence claim must be viewed in light of after-discovered testimony—namely, an affidavit by Warren dated May 27, 2015, admitting that he committed perjury when he testified that Petitioner shot Autry, and admitting that it was he and his brother, Sharif Warren, who actually committed the crime.  (Doc. No. 9 at 10–11.)

"When a petitioner alleges entitlement to habeas relief by challenging the sufficiency of the evidence supporting his state court conviction . . . the clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in

15

*Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) (quoting *Jackson*, 443 U.S. at 319) (emphasis in *Jackson*)).[11] Unlike a habeas claim asserting actual innocence, which Petitioner withdrew in his supplemental habeas petition (Doc. No. 26 at 18), "*Jackson* does not extend to nonrecord evidence, including newly discovered evidence," and therefore cannot encompass Warren's 2015 affidavit of confession. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). *See also Sullivan v. Cuyler*, 723 F.2d 1077, 1083 (3d Cir. 1983) ("It is axiomatic that a federal habeas court reviewing the evidence in support of a petitioner's state court conviction must look to an unaugmented state court trial record."); *Moore v. Diguglielmo*, No. 05-2796, 2010 U.S. Dist. LEXIS 50664, at *9 n.3 (E.D. Pa. May 18, 2010) ("[A] sufficiency of the evidence inquiry extends only to evidence in the trial record and therefore could not encompass the affidavits Moore now proffers."). Thus, the Court does not consider Warren's post-trial confession recanting his testimony against Petitioner when analyzing his sufficiency of the evidence claim. Considering the evidence that was presented at the trial court level in the light most favorable to the prosecution, the Court agrees with Judge Sitarski's finding that the Superior Court did not unreasonably apply *Jackson*, nor were its factual findings objectively unreasonable, especially in light of Warren's testimony that Cobb and Petitioner exchanged shots and the physical evidence

---

[11] The Pennsylvania standard applied by the Superior Court in this case—whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt—is consistent with *Jackson*. *See Evans v. Ct. of Comm. Pleas, Del. Cnty.*, 959 F.2d 1227, 1232–33, n.6 (3d Cir. 1992); *Verdier*, 2017 WL 3976366, at *1.

showing at least 27 shots were fired during the shootout. *See Verdier*, 2017 WL 3976366, at *2–3.

As such, the Court overrules Petitioner's objection and concludes that Petitioner is not entitled to relief on his sufficiency of the evidence claim.

### C. Remaining Claims

Finally, as discussed above, Petitioner's supplemental *pro se* habeas petition added two claims arguing that his trial counsel was ineffective in "failing to investigate and prepare a defense strategy," and that his trial counsel was "ineffective for failing to make a key argument to the jury regarding the doctrine of transferred intent during closing arguments." (Doc. No. 26 at 3, 11, 17.) Upon careful and independent consideration of the petition for a writ of habeas corpus, and after review of the Amended R&R, to which Petitioner did not object, the Court does not discern any clear error in the recommendation to deny these claims. As such, the Court approves and adopts the Amended R&R as to these claims.

### IV. CONCLUSION

For the foregoing reasons, upon consideration of Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. Nos. 1, 26), the Amended R&R (Doc. No. 45) and objections to the initial R&R (Doc. No. 9), this Court adopts the Amended R&R in its entirety, denies Petitioner's habeas petition with prejudice, and overrules Petitioner's objections to the R&R. An appropriate Order follows.